

ENTERED
03/20/2019

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: § | | |
| GOODRICH PETROLEUM § | CASE NO: 16-31975 | |
| CORPORATION, *et al* § | | |
|     Debtors § | | |
| § | CHAPTER 11 | |
| § | | |
| COUSHATTA BAYOU LAND COMPANY § | | |
| LLC § | | |
|     Plaintiff § | | |
| § | | |
| VS. § | ADVERSARY NO. 18-03005 | |
| § | | |
| GOODRICH PETROLEUM COMPANY § | | |
| LLC, *et al* § | | |
|     Defendants § | | |

## MEMORANDUM OPINION

Coushatta Bayou Land Company, LLC entered into a mineral lease with Goodrich Petroleum Company, LLC in February 2010. (ECF No. 39-2 at 8). The terms of the lease provided Coushatta with royalty payments that are free from the costs of production. However, the royalty clause contains an exception: the parties must share production costs from "unaffiliated third parties" in which Goodrich does not have a "beneficial interest." (ECF No. 38 at 4). Coushatta and Goodrich dispute the interpretation of this provision. Coushatta argues that its royalty payments are free from the costs of operating wells on the property, while Goodrich claims Coushatta must share operating expenses because they arise from an unaffiliated third party. (ECF Nos. 38 at 2–3; 39-2 at 8).

Goodrich's motion for summary judgment is granted. Coushatta's motion for summary judgment is denied.

**Background**

Coushatta owns land and associated mineral interests in the Bossier and Bienville Parishes of Louisiana. (ECF No. 39-2 at 8). In February 2010, Goodrich entered into an Oil, Gas, and Mineral Lease with Goodrich Petroleum Corporation which entitled Coushatta to receive a 30% royalty payment and a one-time bonus payment of $2,000,000.00 upon execution. (ECF No. 39-2 at 8). This lease was renegotiated in May 2010 after Coushatta agreed to return the bonus payment in exchange for a higher royalty payment of 35.0%. (*See* ECF No. 1 at 6). Both leases contain the following provision within "Exhibit A" which modifies the royalty clause:

> The royalty interest of [Coushatta] provided for in this lease shall not be charged, and shall not bear, any costs whatsoever in connection with the production, compression, gathering and transportation costs except charges incurred by [Goodrich] from unaffiliated Third Parties in which [Goodrich] does not have a beneficial interest.

(ECF No. 39-2 at 9).

BHP Billiton Petroleum was retained as the operator for the lease and eventually drilled nine producing wells on Coushatta's property. (ECF No. 38 at 3). Oil and gas produced from these wells was sold and BHP then distributed Coushatta's royalty proceeds either directly to Coushatta, or to Goodrich who would then remit the proceeds to Coushatta. (ECF No. 38 at 4). In either case, Coushatta's royalty payments were proportionately reduced by the amount of BHP's production costs. (ECF No. 38 at 4).

These royalty payments form the basis of this dispute. Coushatta initiated this adversary proceeding on January 8, 2018, alleging that Goodrich improperly withheld royalty payments due under this lease. (ECF No. 1 at 7–8). Coushatta argues that Goodrich is affiliated with, and holds a beneficial interest in, BHP based on marketing and contractual relationships. (ECF No.

39-2 at 17–18). Thus, allegedly under the language of the lease, Coushatta argues its royalty payments should be free from any costs attributable to BHP's operations. (*See* ECF No. 39-2).

Goodrich disputes Coushatta's view, arguing that its business transactions with BHP were arm's length negotiations between separate companies without an affiliate relationship or beneficial interest. (ECF No. 38 at 9). To Goodrich, the royalty provision of the lease requires that Coushatta pay its proportionate share of BHP's costs. (ECF No. 38 at 8).

## Jurisdiction

The District Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), and (O). Pursuant to 28 U.S.C. § 157(a), this proceeding has been referred to the Bankruptcy Court by General Order 2012-6.

## Analysis

### *Summary Judgment Standard*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). FED. R. BANK. P. 7056 incorporates FED. R. CIV. P. 56 in adversary proceedings. A party seeking summary judgment must demonstrate the absence of a genuine dispute of material fact by establishing the absence of evidence supporting an essential element of the non-movant's case. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009). A genuine dispute of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party. *Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 170 (5th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In cases involving the interpretation of a contract, summary judgment is only appropriate where the language of the contract is unambiguous. *See Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1192 (2d Cir. 1996); *Cooper Indus., LLC v. Precision Castparts Corp.*, 2016 WL 4939565, at *6 (S.D. Tex. Sept. 14, 2016).

A court views the facts and evidence in the light most favorable to the non-moving party at all times. *Ben-Levi v. Brown*, 136 S. Ct. 930 (2016). Nevertheless, the Court is not obligated to search the record for the non-moving party's evidence. *Keen v. Miller Envtl. Grp., Inc.*, 702 F.3d 239, 249 (5th Cir. 2012). "Summary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015), *cert. denied*, 136 S. Ct. 1715 (2016).

A party asserting that a fact cannot be or is genuinely disputed must support that assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support that fact. FED. R. CIV. P. 56(c)(1). The Court need consider only the cited materials, but it may consider other materials in the record. FED. R. CIV. P. 56(c)(3). The Court should not weigh the evidence. *Wheat v. Fla Par. Juvenile Justice Comm'n*, 811 F.3d 702, 713 (5th Cir. 2016). A credibility determination may not be part of the summary judgment analysis. *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014). However, a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. FED. R. CIV. P. 56(c)(2). Moreover, the Court is not bound to search the record for the non-moving party's evidence of material issues. *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014).

"The moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 536 (5th Cir. 2015). The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

If the movant bears the burden of proof on an issue, a successful motion must present evidence entitling the movant to judgment at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986). Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine dispute of material fact. FED. R. CIV. P. 56(c)(1); *Celotex*, 477 U.S. at 322–24. The non-moving party must cite to specific evidence demonstrating a genuine dispute. FED. R. CIV. P. 56(c)(1); *Celotex*, 477 U.S. at 324. The non-moving party must also "articulate the manner in which that evidence supports that party's claim." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). Even if the movant meets its initial burden, the motion should be granted only if the non-movant cannot show a genuine dispute of material fact.

*Applicable Law*

Both parties agree that Louisiana law controls interpretation and effect of this contract. (*See* ECF Nos. 38 at 8, 39-2 at 13). Under Louisiana law, contracts are interpreted according to their plain meaning. *Lifemark Hospitals, Inc. v. Liljeberg Ent., Inc. (In re Liljeberg Ent., Inc.)*, 304 F.3d 410, 439 (5th Cir. 2002) (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Circle, Inc.*, 915 F.2d 986, 989 (5th Cir. 1990)). "[W]here the words of a contract are clear and explicit and lead to no absurd consequences, the contract's meaning and the intent of its parties must be sought within the four corners of the document and cannot be explained or contradicted by

extrinsic evidence." *Am. Totalisator Co., Inc. v. Fair Grounds Corp.*, 3 F.3d 810, 813 (5th Cir. 1993). "If a court finds the contract to be unambiguous, it may construe the intent from the face of the document—without considering extrinsic evidence—and enter judgment as a matter of law." *Id.* An ambiguous contract is "uncertain as to the parties' intentions and susceptible to more than one reasonable meaning under the circumstances and after applying established rules of construction." *Davis Oil Co. v. TS, Inc.*, 145 F.3d 305, 308 (5th Cir. 1998). "This established rule of strict construction does not allow the parties to create an ambiguity where none exists and does not authorize courts to create new contractual obligations where the language of the written document clearly expresses the intent of the parties." *Omnitech Int'l, Inc. v. Clorox Co.*, 11 F.3d 1316, 1326 (5th Cir. 1994).

The parties agree that the terms of the royalty clause are unambiguous. (ECF Nos. 38 at 8, 39-2 at 17). However, they diverge regarding the proper interpretation of those terms. This dispute may be narrowed to the proper interpretation of two sections: "unaffiliated Third Parties" and "beneficial interest." (ECF Nos. 38 at 7–9, 39-2 at 17–20).

It is important to note that Coushatta does not allege that Goodrich received any preferential treatment from BHP. Goodrich pays its full, proportionate share of the BHP charges just as Coushatta must pay its full proportionate share. The absence of any preferential treatment by BHP to Goodrich (i) tends to demonstrate the absence of any affiliation; and (ii) destroys any equitable argument that Coushatta is being treated unfairly.

In that light, the Court examines the contract between the parties and concludes that Coushatta has no good faith basis to assert its claims.

Unaffiliated Third Parties

The lease states that Coushatta "shall not be charged, and shall not bear" production costs, except for charges "incurred by [Goodrich] from unaffiliated Third Parties. . . ." (ECF No. 39-2 at 9).  Coushatta argues that as the operator of the wells, BHP falls outside of this exception. (ECF No. 39-2 at 17).  Based on the unitization of the wells, Coushatta claims "BHP . . . became affiliated with everyone in that unit with the rights to receive monies and cost allocations. . . . BHP produces the wells for the benefit of itself and all other stakeholders in the units." (ECF No. 39-2 at 17–18).  Goodrich adopts a literal interpretation of "unaffiliated third parties," claiming that Goodrich and BHP are separate corporate entities and thus fall within the exception to production costs, to which Coushatta must contribute.  (ECF No. 38 at 9).

An affiliate is defined as "a corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation." *Affiliate*, BLACK'S LAW DICTIONARY (10th ed. 2014).  The definition of affiliate comports with Goodrich's interpretation of this term.  Goodrich and BHP are separate corporate entities and have no parent-subsidiary relationship that would justify including BHP within the production cost carveout.

Coushatta quotes the Merriam Webster definition of unaffiliated as "not closely associated with, belonging to, or subordinate to another, not affiliated." (ECF No. 39-2 at 16–17).  This definition further supports Goodrich's argument that it is unaffiliated with BHP.  The use of "belonging to" and "subordinate" in the lay definition of unaffiliated indicates control between affiliated entities that is not present between BHP and Goodrich.

Coushatta also suggests that the closely aligned monetary interests between BHP and Goodrich establish an affiliate relationship between the two.  (ECF No. 39-2 at 17–18).

Coushatta claims that an affiliate relationship exists based on the unitization of these wells, which requires that BHP produce minerals and hold Goodrich's assets for "the benefit of itself and other stakeholders." (ECF No. 39-2 at 17–18).

Coushatta's argument is unpersuasive. Unitization consolidates individual interest holders, who are separately producing minerals from a common reservoir, under a single operator for the purpose of maximizing production from the reservoir. *See Campbell v. Fields*, 229 F.2d 197, 199–200 (5th Cir. 1956). The Court was unable to locate any case law (nor does Coushatta cite any) holding that unitization creates a parent-subsidiary relationship between two separate entities. A duty to prevent waste or act for the benefit of other interest holders similarly fails to invoke the control of a parent-subsidiary relationship referenced in the plain language of the lease.

Coushatta also points to a natural gas marketing contract that appoints Petrohawk, a BHP affiliate, as Goodrich's agent as additional evidence of an affiliate relationship. (ECF No. 39-2 at 18). As with Coushatta's unitization argument, no authority is cited that transforms a contractual agency relationship into a parent-subsidiary relationship.

Other provisions of the lease run contrary to Coushatta's broad interpretation of "unaffiliated." Paragraph 4 of the lease requires that Coushatta pay "its proportion of any expenses for treating the oil to make it marketable as crude." (ECF No. 39-6 at 1). This provision was modified by Exhibit A, which excepted Coushatta's royalty from "charges incurred by [Goodrich] from unaffiliated Third Parties. . . ." (ECF No. 39-6 at 4). What appears to be a narrow exception to the lease provision would expand to eliminate paragraph 4 under Coushatta's broad interpretation. Coushatta would be exempted from paying its share of costs for every party that contracted or was connected to Goodrich, even without Goodrich's consent

(such as through a unitization order). This would read paragraph 4 out of the lease, leading to an "absurd consequence" prohibited under Louisiana's contract interpretation rules. *Am. Totalisator Co., Inc.*, 3 F.3d at 813.

Coushatta claims that the royalty provision in Exhibit A was included "to re-define the concept of the royalty base," prevent self-dealing between Goodrich and BHP, and that its interpretation of the royalty clause reflects the intent of the parties. (ECF No. 39-2 at 19). However, the inclusion of the exception demonstrates the parties' intent that Coushatta bear costs of production, which is echoed in paragraph 4 of the lease. (ECF No. 39-6 at 1). Logically, if the parties intended to redefine the royalty base as Coushatta proposes, the clause would simply end after stating that Coushatta's royalty interests are free from the costs of production. It would not have included an exception that includes production costs for "unaffiliated Third Parties" without a "beneficial interest."

Coushatta also cites the Fifth Circuit's opinion in *Columbine II Ltd. P'ship v. Energen Resources Corp.* to support its interpretation of the royalty provision. 129 F. App'x 119, 122–23 (5th Cir. 2005). In *Columbine II*, the Fifth Circuit affirmed the district court's ruling that Energen improperly deducted operating costs from Columbine's overriding royalty interest pursuant to a sublease agreement. *Id.* The Fifth Circuit based its decision on language in the sublease agreement that "*expressly precludes* the deduction of post-production transportation costs." *Id.* (emphasis added).

Coushatta claims that the holding of *Columbine II* parallels the royalty provision in Exhibit A, which states: "the royalty interest . . . shall not be charged, and shall not bear, any costs whatsoever. . . ." (ECF No. 39-2 at 21). However, Coushatta's argument ignores the remainder of the royalty provision, which imposes production costs on Coushatta's royalty when

9 / 11

incurred by an "unaffiliated Third Party" without a "beneficial interest." This exception distinguishes the royalty provision at issue from the one in *Columbine II*, which unequivocally precluded charging post-production costs. *Columbine II*, 129 F. App'x at 122–23. As a result, Coushatta has failed to establish that BHP is an affiliate of Goodrich or that the royalty provision in Exhibit A exempts its royalty interest from BHP's production costs.

Both Goodrich and Coushatta cite other authority such as the Louisiana corporate law, federal statutes, and the Bankruptcy Code to support their view of "unaffiliated Third Party." (*See* ECF Nos. 43 at 10–12, 44 at 5–6). However, these arguments are moot under Louisiana's contract interpretation standard, which requires that the "intent of [the contract's] parties must be sought within the four corners of the document." *Am. Totalisator Co., Inc.*, 3 F.3d at 813. "Unaffiliated" is unambiguous in the context of the lease and requires that control exist between entities before Coushatta receives its royalty free of production costs. Accordingly, the Court need not consider any uses of "unaffiliated" beyond the plain meaning in the contract.

Beneficial Interest

The royalty provision in Exhibit A requires that Coushatta's royalty bear production costs except from "unaffiliated third parties in which [Goodrich] does not have a *beneficial interest*." (ECF No. 39-2 at 9) (emphasis added). Coushatta claims that the unitization order and Goodrich's contractual relationships with BHP and its subsidiary, Petrohawk, also establishes Goodrich's beneficial interest in BHP. (ECF No. 39-2 at 18).

A beneficial interest is defined as "a right or expectancy in something (such as a trust or an estate), as opposed to legal title to that thing." *Beneficial interest*, BLACK'S LAW DICTIONARY (10th ed. 2014). The term is commonly employed by trusts to allow the use of trust property or income while legal title to such property remains with the trust. *Id.* Coushatta purports that

BHP's possession of oil and gas produced from the wells as well as Petrohawk's marketing agreements with Goodrich demonstrate such a beneficial interest. (ECF No. 39-2 at 18).

Coushatta has also adopted an overly broad view of "beneficial interest" in this clause. According to its definition a beneficial interest holder does not have legal title to the property. *Beneficial interest*, BLACK'S LAW DICTIONARY (10th ed. 2014). However, Goodrich has an ownership interest in the oil and gas produced by BHP from the wells in question. Coushatta admits this stating, "BHP is in possession of the production which *belongs to Goodrich*." (ECF No. 39-2 at 18) (emphasis added). With legal title to the production from the wells, Goodrich has no beneficial interest in BHP. Similarly, Petrohawk and Goodrich have a contractual relationship that obligates Petrohawk to market gas on behalf of Goodrich. (ECF No. 43 at 14). However, such a contractual relationship is distinguishable from the beneficiary and trustee relationship contemplated by the holder of a beneficial interest. Accordingly, Coushatta has failed to establish that Goodrich held a beneficial interest in BHP and is obligated to pay its share of production costs under the royalty provision of Exhibit A.

## Conclusion

The Court will issue a Judgment consistent with this Memorandum Opinion.

SIGNED **March 20, 2019.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE